Appellant Ferrin Hopson appeals the October 1, 2001 judgment entry of the Court of Common Pleas, Juvenile Division, of Marion County, Ohio, finding that he committed offenses, which if committed by an adult would constitute gross sexual imposition and rape, and committing him to the Department of Youth Services (hereinafter "DYS").
On the evening of September 25, 2000, the victim of this offense, a four-year-old child, was attending a Boy Scout ceremony with her parents and older brother at a church. Her parents were leaders of a Boy Scout troop. After the ceremony, several adults were talking in the lower level of the church, while the troop planned a menu for their next camping trip. During this time, the victim, her brother, Appellant Ferrin Hopson, and another boy named Nathan began playing upstairs. The four children became separated at some point, and it was during this time that the victim was sexually abused.
Immediately after the abuse took place, the victim ran downstairs crying and hysterical. She found her mother, Nicole, and told her that a boy, whom she referred to as Nathan, had hurt her. She then told her mother that the "boy stuck his fingers in my tookie," which her mother knew was the word she used to describe her vagina. Nicole then informed her husband, Brian, about what had happened. As Brian began searching for Nathan, Nicole called the police. The victim followed her father as he searched for Nathan, and upon seeing Ferrin outside of the church, she became frightened. When her father noticed her facial expression upon seeing Ferrin, he inquired as to whether it was Ferrin who hurt her. The victim answered affirmatively and began pointing at Ferrin and stating that he was the one who hurt her. Her mother then took her back into the church and told her that she had said that "Nathan" was the one who had hurt her, but the victim insisted that it was Ferrin, stating that she "just didn't know his name, but that's the face." The police arrived, and Nicole took the victim to the hospital where the victim told the nurse what had happened and once again stated that Ferrin was the one who had abused her.
On May 22, 2001, the appellee, the State of Ohio, filed a complaint of delinquency, alleging that Ferrin committed the offenses of gross sexual imposition and rape, both involving a person, not his spouse, under the age of thirteen. The matter proceeded to a hearing before the magistrate of the juvenile division of the Court of Common Pleas of Marion County, Ohio, on July 20, 2001. The magistrate found that the State had proven beyond a reasonable doubt that Ferrin had committed the alleged offenses. On August 20, 2001, the magistrate issued findings of fact and conclusions of law regarding this decision. Ferrin's counsel filed objections to the magistrate's findings and conclusions with the Common Pleas Court on August 31, 2001. On October 1, 2001, the trial court adopted the decision of the magistrate in its entirety as its order. Ferrin, who was fourteen-years-old at the time of the offense, was committed to DYS for a minimum period of one year and for a maximum period not to exceed his twenty-first birthday. This appeal followed, and Ferrin now asserts three assignments of error.
 THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE CHILD DECLARANT'S OUT-OF-COURT STATEMENTS WHICH CONSTITUTED INADMISSABLE (sic) HEARSAY, AND THEREBY VIOLATED THE RESPONDENT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 THE JUDGMENT IN THE TRIAL COURT FINDING THE RESPONDENT-APPELLANT TO BE A DELINQUENT CHILD BEYOND A REASONALBE (sic) DOUBT OF THE CRIMES OF GROSS SEXUAL IMPOSITION AND RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THE TRIAL COURT ERRED IN ALLOWING THE EIGHT-YEAR-OLD WITNESS, THE BROTHER OF THE "VICTIM", TO TESTIFY, AS THIS YOUNG PERSON WAS NOT A COMPETENT WITNESS.
 As the first and third assignments of error both involve evidentiary issues, they will be addressed first.
 First Assignment of Error
In the first assignment of error, Ferrin's counsel challenges the trial court's decision to allow the testimony of Karen Baney, the nurse who examined the victim at the hospital the night of the sexual assault. Specifically, Ferrin contends that Nurse Baney should not have been permitted to testify as to what the victim said during her examination because admitting such hearsay violated his right to confront witnesses. However, the State maintains that the victim's statements to the nurse were admissible under the medical records exception.
In determining whether to admit a hearsay statement, the trial court has discretion, and thus, its decision will not be reversed absent an abuse of that discretion. See State v. Dever (1992), 64 Ohio St.3d 401,410 (citations omitted). The Rules of Evidence provide that a hearsay statement is inadmissible unless it falls into one of the enumerated exceptions. Evid.R. 802. The Rules further provide that "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history * * * or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are not excluded by the hearsay rule. Evid.R. 803(4).
In Dever, the Ohio Supreme Court determined that the medical records exception, Evid.R. 803(4), is a firmly rooted hearsay exception, which does not violate the Confrontation Clause of the United States Constitution. Dever, 64 Ohio St.3d at 418. In addition, the Court found that "[i]n many situations, the statements of young children are sufficiently trustworthy and can appropriately be admitted pursuant to Evid.R. 803(4)." Id. at 410. However, the Court also held that "[t]he trial court should consider the circumstances surrounding the making of the hearsay statement. If the trial court finds in voir dire that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of diagnosis or treatment." Id. The trial court is to consider all factors that would affect the reliability of the statement, including "whether the child's statement was in response to a suggestive or leading question[.]" Id. Finally, "if the trial court discerns the existence of sufficient factors indicating that the child's statements were not made for the purpose of diagnosis or treatment, the statements must be excluded as not falling within Evid.R. 803(4)." Id. at 410-411.
In the case sub judice, the victim first accused a boy, whom she referred to as "Nathan", as the perpetrator. However, upon seeing Ferrin, she was visibly frightened. Although her father did ask her if it was Ferrin who harmed her, a leading question, he was not unduly suggestive, and she immediately began pointing at Ferrin and stating that he was the one that hurt her. Her mother then took her aside and told her that it was important that she identify the person who actually harmed her, which led to her insistence that "that's the face, that's him." Moreover, once at the hospital, her statements to Nurse Baney about the cause of her injuries and exactly what had happened to her were not responses to leading questions. Rather, the victim stated "he took me in the living room upstairs" and when asked who "he" was, she stated, "Ferrin * * * My Dad reminded me his name. I've seen him a lot of times." Her statements to Nurse Baney were pertinent in determining the cause and extent of her injuries, including the specific nature of her injuries.
These statements were not inappropriately influenced at the time of making given the circumstances. The fact that she initially stated the wrong name does not make her subsequent statements unreliable. This is true especially in light of the circumstances, whereby she became scared upon seeing him immediately following the abuse, pointed to him upon seeing him, repeatedly stated that he was the one that hurt her, indicated that she knew his face, and relayed the same information to her mother, her father, and Nurse Baney at different times. Moreover, Ferrin, himself, admitted that she had called him the wrong name before. Thus, the trial court did not abuse its discretion in admitting the evidence as it fell within the medical records exception to the hearsay rule. Accordingly, the first assignment of error is overruled.
 Third Assignment of Error
Ferrin's counsel next contends that the trial court erred in allowing the testimony of the victim's eight-year-old brother because he was not a competent witness. The Rules of Evidence prevent the testimony of "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). However, this Court once again notes that whether to admit testimony is within the discretion of the trial court.
Ferrin contends that the victim's brother did not constitute a competent witness because he indicated that his parents and the Victim's Assistance Advocate had spoken to him about being at the hearing and what he was supposed to say. However, when asked whether he was told not to tell the truth during the hearing, he responded in the negative. The witness also indicated that he knew the difference between the truth and a lie, and he demonstrated such knowledge when asked questions about the color of the prosecutor's and the magistrate's clothing. Moreover, the witness indicated that he knew that it was good to tell the truth and bad to tell a lie, and he testified that he knew that it was important to tell the truth during the hearing. Thus, the trial court did not abuse its discretion in permitting the testimony of the victim's brother, and the third assignment of error is overruled.
 Second Assignment of Error
Lastly, Ferrin's counsel contends that determining Ferrin to be a delinquent beyond a reasonable doubt was against the manifest weight of the evidence. We disagree. The doctor who examined the victim testified that there was blood in the victim's vaginal area and that his examination of her revealed that she was sexually abused. The defense did not dispute this. The testimony, including Ferrin's testimony, also revealed that Ferrin and the victim were alone together at some point on that evening. In fact, Ferrin testified that he knew of no one else who was alone with the victim. Additionally, Nicole testified that the victim was crying and hysterical as she told her mother what had happened to her immediately before. Moreover, both Nicole and Brian testified that their daughter, the victim, pointed to Ferrin and told them that Ferrin was the one who had hurt her. Although, the victim initially provided the incorrect name, she never confused Ferrin's face with that of her abuser, nor did she become frightened upon seeing anyone other than Ferrin. Thus, the adjudication of delinquency beyond a reasonable doubt was not against the manifest weight of the evidence. Therefore, the second assignment of error is overruled.
For all of these reasons, the assignments of error are all overruled. It is the order of this Court that the judgment of the Common Pleas Court, Juvenile Division, of Marion County, Ohio, is affirmed.
Judgment Affirmed.
BRYANT and WALTERS, J.J., concur.